On 13 December, 1775, Whitmill Tuff Dick, king of the said tribe of Indians, for himself and his nation, made a lease in writing, under seal, of a part of the aforesaid tract, to William King for ninety-nine years. The lease contains a covenant on the part of said William King, his heirs, etc., to pay to the lessors, their heirs and successors, the yearly sum of ______ during the continuance of the lease.
King took possession of the land described in the lease immediately (337) after its execution; and he, and those who claim under him, have had the undisturbed possession of said land from that time continually up to the bringing of this suit.
In April, 1726, ________ obtained a grant from the Lords Proprietors' deputies for the same land mentioned in the lease from the Tuscaroras *Page 261 
to William King, and on 21 October, 1777, the said William King obtained a conveyance in fee simple for the same land, derived from the grant of 1726.
Some of the Indians of the aforesaid tribe remained in actual possession of part of the land comprehended in the grant of 5 June, 1717, until June, 1803, when they finally removed from the said land to the State of New York, leaving one of their tribe in the county of Martin (not on the lands granted to them) to attend to their concerns, receive their rents, etc.
After their removal from the lands so granted on 5 June, 1717, in June, 1803, the defendants refused to pay the rent reserved by the lease. This action was brought on the covenant contained in the lease, to recover the rents in arrears.
The defendants opposed the plaintiff's claim for the rents on the following grounds:
1. That by the act of 1748, ch. 3, sec. 3, it is enacted, "that it shall and may be lawful for any person or persons that have formerly obtained any grant or grants under the late Lords Proprietors for any tracts or parcels of land within the aforesaid boundaries (meaning the boundaries of the land described in the grant to the Indians of 5 June, 1717), upon the said Indians deserting or leaving said lands, to enter, occupy, and enjoy the same, according to the tenor of their several grants, anything herein to the contrary, notwithstanding."
2. That the Indians having removed themselves from the said land, the defendants claim the possession of that which they occupy, under the title derived from the grant of April, 1726, and not under the lease made to their ancestor by the Indians in December, 1775.
The jury, under the charge of the court, found for the (338) plaintiffs the amount due for the arrears of rent. A motion for a new trial was made for misdirection of the court, which being overruled, the defendants appealed to this Court.
If the title of the Tuscarora tribe of Indians to the lands leased by them to the defendant's ancestor depended solely on the confirmation it received by the sec. 2 of ch. 3, Laws 1748, to which the sec. 3 (relied on by the defendants) is added by way of proviso, the grant and the condition annexed to it would now be regarded as forming on entire contract between the sovereignty of this State and the tribe of Indians. Their title, however, rests on higher grounds. The Governor and the deputies of the Lords Proprietors, having full and competent powers for that purpose, did, by the grant of 5 June, 1717, *Page 262 
vest the lands thereby granted in the Tuscarora tribe, absolutely and unconditionally. The grant recites that it is made "in consideration ofgreat services rendered by the said tribe of Indians to the Government, and of their agreeing to relinquish all claim to the other lands which had been before allotted to them." It contains no condition by which the Indians are bound to reside actually and perpetually on it. It is a conveyance (in substance) in fee simple, by those having power to convey, to persons capable of taking and holding lands in fee.
The acts of the General Assembly confirming their title, providing for their comfortable enjoyment of it, by prohibiting white persons from hunting and trespassing on their lands, were such as policy and justice dictated, and are entitled to approbation and support; but the proviso in sec. 3, ch. 3, 1748, under which the defendants claim, being in derogation of rights actually vested in the plaintiffs by the highest authority, cannot be regarded or allowed to have any weight in deciding this case.
If, however, the Assembly of 1748 had power to annex the condition contained in the proviso referred to, they had equally a right afterwards to modify, alter, or abrogate that condition. It cannot be contended (339) that the aforesaid sec. 3, ch. 3, Laws 1748, is irrepealable, and that all which has been done by subsequent Assemblies for the modification of it is void, because repugnant to that proviso.
Pursuing the acts of Assembly on this subject, we find that by ch. 16, Laws 1778, certain leases made by the Indians were rendered valid; that the lands leased to Jones, and to other persons, shall revert to and become the property of the State at the expiration of the leases, if the nation be extinct; and the lands now belonging to and possessed by the Tuscaroras shall revert to and become the property of the State whenever the said nation shall become extinct, or shall entirely abandon or remove themselves off the said lands, and every part thereof."
The lease made by the Indians to William King is within the operation of this act; and if any effect is to be allowed to legislative will on this subject, a very different appropriation is made of the land granted to the Indians on the happening of either of the events mentioned in the act of 1778, from that made by the act of 1748, under which the defendants claim.
We further find that by the act of 1802, ch. _____, the Indians were authorized to lease out their unleased lands, to extend other leases. Commissioners were appointed under its authority to superintend and direct the management of their concerns; and they finally agreed by treaty with this State (with the approbation and consent of the General Government) at the expiration of the leases to abandon all claims to the *Page 263 
lands to the State. It is expressly declared and provided by said act, "that the possession of the lessees shall be considered the possession of the Indians."
At the time the act of 1802 passed and took effect the plaintiffs, either by themselves or their lessees, were in possession of all the land comprehended in the grant of 5 June, 1717. The General Assembly were apprized that the Indians intended to remove from it; they had agreed to renounce all claim to the land on the expiration of the leases made and to be made under the said act, for the purpose of securing to them the full benefit of the leases; to allay their (340) apprehensions that their removal from the land might destroy their claims to the rents secured by their leases; in short, to obviate thevery objection made by the defendants against the plaintiff's demand, under color of the proviso in sec. 3, ch. 3, Laws 1748, the General Assembly, with a proper regard to liberality and justice, enacted and declared that the possession of the lessees should be considered the possession of the plaintiffs; in effect saying that the removal of the Indians from the land should not prejudice their claim to the rents due and to grow due on leases made and to be made by them.
Viewing this case with reference merely to the acts of Assembly passed on this subject, and admitting that the plaintiffs' claim must be governed by those, it is very clear to us that they are entitled to recover.
There is, however, another ground on which the plaintiffs are entitled to prevail. Admitting (for the sake of argument) that the fee simple of the land comprehended in the lease vested by the grant of 1726, the mesne conveyances under it, coupled with the actual removal of the Indians, in William King, the ancestor of the defendants (on which point we give no opinion); yet, as he accepted the lease on which this act is brought, and took possession of the land under it, he could not, and those claiming under him cannot, during the continuance of the lease, say that the plaintiffs have no right to recover the rents reserved and secured by it. Lord Coke says: "If a man take a lease of his own land, by deed indented, reserving rent, the lessee is concluded." Co. Lit., sec. 58, 47 B.
The Court is unanimously of opinion that the motion for a new trial be overruled, and that there be judgment for plaintiff.
NOTE. — On the last point, see Dunwoodie v. Carrington, post, 469;Smart v. Smith, 13 N.C. 258; Yarborough v. Harris, 14 N.C. 40; Mobleyv. Runnells, 14 N.C. 303; Hartzog v. Hubbard, 19 N.C. 241; Lunsford v.Alexander, 20 N.C. 40; Belfour v. Davis, ibid., 300; Montgomery v. Wynns,ibid., 527; Love v. Edmonston, 23 N.C. 152.
Cited: Eu-che-lah v. Welsh, 10 N.C. 162. *Page 264 
(341)